# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BERTHA E. LEEPER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-378-SPS |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Bertha E. Leeper requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 17, 1956, and was fifty-five years old at the time of the administrative hearing (Tr. 35, 145). She completed tenth grade, and has worked as a cashier and cafeteria attendant (Tr. 27, 179). The claimant alleges that she has been unable to work since February 13, 2010, due to arthritis in her hips, a back injury, and ovarian cysts (Tr. 178).

## Procedural History

On March 17, 2010, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 13, 2012 (Tr. 18-28). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except that she could not lift or carry over 15 pounds occasionally and ten pounds frequently, that her pushing and pulling limitations were consistent with the lifting and carrying limitations, that she could stand/walk six hours in an eight-hour workday, and that she could sit six to eight hours in an eight-hour workday.

He imposed the additional limitations of: occasional climbing of stairs, ladders, ropes and scaffolds, bending, and stooping. Additionally, the ALJ imposed the following limitations related to her mental impairments: limited to simple tasks; limited to superficial contact with coworkers and supervisors and no contact with the public (meaning incidental contact with no interaction generally between employee and public such as a janitor responding to a question from a person on where to find a bathroom, etc.); supervision should be simple, direct, and concrete; and she could do goal-oriented work (such as housekeeper), but could not do high production quotas as found in some assembly work (Tr. 22). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economy she could perform, *i. e.*, electrical assembler (Tr. 28).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly consider a Third Party Function Report and observations by employees of the Defendant, (ii) by failing to fully develop the record, (iii) by failing to properly consider all the evidence in the record and relying on outdated opinions, and (iv) by failing to properly identify jobs she can perform. The Court agrees with the claimant's third contention, and the decision of the Commissioner must therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of degenerative disc disease, affective disorder, and substance addiction disorder (Tr. 20). Medical evidence related to the claimant's physical impairment reveals that she was injured at work on

October 9, 2009, resulting in a thoracic and lumbar spine injury with right leg radiculitis secondary to work-related trauma (Tr. 268). In evaluation of her injury on January 20, 2010, Dr. Kenneth R. Trinidad, D.O., found that the claimant was not temporarily totally disabled because light duty work had remained available to her (Tr. 269). However, Dr. Trinidad reevaluated his opinion and found her temporarily totally disabled as of February 13, 2010 because no light duty work was available after that time (Tr. 310). He indicated that her condition remained acute and required treatment and evaluation (Tr. 310).

On March 16, 2010, a CT scan revealed a very large complex cystic abdominal mass in her left ovary (Tr. 274). She underwent surgery on May 3, 2010, to remove the mass (Tr. 358). The claimant was evaluated at the Eastern Oklahoma Orthopedic Center for her bilateral L4 radiculitis and underwent an MRI of the lumbar spine. Dr. Tyler Boone then completed work restrictions for her, indicating that she could not lift/carry over 17 pounds, could perform no repetitive lifting over ten pounds, and that she could perform a "sit down job only" (Tr. 377-378). A July 26, 2010 MRI of the lumbar spine revealed L5-S1 central to left paracentral protrusion contacting the proximal left S1 nerve root without definite nerve root compression or edema, and she was prescribed a lumbar corset (Tr. 479-480). Dr. Boone again completed a work restrictions form, indicating that she could not lift/carry over 15 pounds with no repetitive lifting over 10 pounds, as well as only occasional stooping and bending (Tr. 481). Dr. Boone also prepared a letter in August 2010 for the claimant's workman's compensation application, stating that she had facet hypertrophy with facet effusions both at L3-4 and L4-5 with some lateral recess

narrowing, central protrusion of the disks at L5-S1, and slight anterior listhesis at L3-4. He recommended that she consider a sedentary or "sit down job" but that she should be considered temporarily totally disabled if one was not available (Tr. 482).

On September 2, 2010, Dr. Kenneth Wainner reviewed the claimant's medical record and determined that she could perform light work with unlimited pushing and pulling, but she could only occasionally climb and stoop, and only frequently balance, kneel, crouch, and crawl (Tr. 488-489). He recited some of Dr. Boone's records, but did not mention Dr. Boone's lifting restrictions or recommendation for a sedentary job.

The claimant underwent an epidural steroid injection on September 28, 2010 (Tr. 495). She then developed an incisional hernia as revealed in a CT of the abdomen and pelvis conducted on November 5, 2010 (Tr. 554). From October 2010 through March 9, 2011, Dr. Boone drafted four letters in which he continued to recommend that the claimant lift no more than ten to fifteen pounds and no more than ten pounds repetitively, and that she work a sedentary job (Tr. 584-587, 595-598). Following a myelogram/postmyelographic CT scan, Dr. Boone recommended an L3-4 hemilaminectomy with L4 foraminotomy, which the claimant agreed to (Tr. 609, 632-633). She underwent surgery on July 19, 2011, and was initially restricted to no lifting greater than five pounds (Tr. 634). Post-surgery, Dr. Boone continued to indicate that the claimant was temporarily totally disabled; he signed a physical Medical Source Statement on September 26, 2011, but stated without further elaboration that the claimant was temporarily totally disabled (Tr. 663). On September 9, 2011, the claimant underwent a

lumbar wound exploration with repair of durotomy, following the development of a lumbar pseudomeningocele (Tr. 792).

In questioning the vocational expert (VE) at the administrative hearing, the ALJ only requested that the VE provide examples of jobs at the light level of work because he acknowledged that the claimant would be considered disabled under the Medical-Vocational Guidelines, a.k.a. "the Grids," if he found she could only perform sedentary work. In his written opinion, the ALJ summarized the claimant's hearing testimony and much of the medical evidence. Specifically, he noted Dr. Boone's treatment records and statements regarding the claimant's temporary total disability. The ALJ noted Dr. Boone's lifting restrictions and postural limitations, then noted (incorrectly) that Dr. Boone had provided no restrictions on the claimant's ability to sit, stand, and walk (Tr. 24-25). He then determined that the RFC assessment was therefore consistent with Dr. Boone's recommendations (Tr. 25). He gave Dr. Boone's conclusion that the claimant was temporarily totally disabled only some weight because workman's compensation conclusions are not dispositive in the context of social security (Tr. 24). He then gave great weight to Dr. Wainner's opinion (which was issued a year prior to the administrative hearing, as well as prior to much of the medical evidence in the record) because the opinion was consistent with the ALJ's RFC assessment, with the exception of lifting restrictions (Tr. 26).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.

2004) [internal citation omitted]. Additionally, "the notice of the determination or decision must contain an explanation of the weight given to the treating source's medical opinion[s]." Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Here, the ALJ assigned great weight to the state agency physician opinion that the claimant could perform light work, but cited no medical evidence that the claimant could actually perform light work. The ALJ asserted that the claimant could perform light work with a lifting restriction to fifteen pounds, but ignored consistent evidence in the record that the claimant needed a sedentary, or "sit down," job. Rather, it seems the ALJ took great pains to only cite to evidence that the claimant could perform light work, in an effort to avoid finding her disabled because she could only perform sedentary work. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Furthermore, the ALJ *is required* to consider the effects of all the impairments and account for them in formulating the claimant's RFC at step four. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those

'not severe.'") [emphasis in original] [citations omitted]. In this case, the ALJ also failed to mention the claimant's nonsevere impairments of arthritis, ovarian cyst, diabetes, hypothyroidism, and hypertension in formulating her RFC. Additionally, the ALJ failed to properly assess the combined effect of *all* the claimant's impairments – both severe and nonsevere – in assessing her RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Because the ALJ failed to refer to evidence supporting his RFC findings and further failed to properly account for the claimant's non-severe impairments, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to the claimant's impairments. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**